No. 23-15613

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————

UNITED STATES ET AL. EX REL. ZACHARY SILBERSHER,

*Plaintiffs-Appellants*,

v.

ALLERGAN, INC., ET AL.,

*Defendants-Appellees*.

————————

On Appeal from the United States District Court for the
Northern District of California,
No. 18-cv-03018

————————

## BRIEF FOR APPELLEES ALLERGAN, INC.,
## ALLERGAN USA, INC., ALLERGAN SALES, LLC,
## AND FOREST LABORATORIES HOLDINGS, LTD.

————————

ERIN E. MURPHY
 *Counsel of Record*
JAMES Y. XI*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are
members of the Virginia bar

*Counsel for Defendants-Appellees Allergan, Inc., Allergan USA, Inc.,
Allergan Sales, LLC, and Forest Laboratories Holdings, Ltd.*

January 29, 2024

## CORPORATE DISCLOSURE STATEMENT

Defendants-Appellants Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC, and Forest Laboratories Holdings, Ltd., state that: Allergan, Inc. is an indirect wholly owned subsidiary of AbbVie Inc. No publicly held corporation other than AbbVie Inc. owns 10% or more of Allergan, Inc.'s stock. Allergan USA, Inc., Allergan Sales, LLC, and Forest Laboratories Holdings, Ltd., are each an indirectly wholly owned subsidiary of AbbVie Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ......................................................... ii

TABLE OF AUTHORITIES........................................................ iv

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION .............................................. 4

STATEMENT OF THE ISSUES ................................................. 4

STATUTORY PROVISIONS ..................................................... 4

STATEMENT OF THE CASE.................................................... 4

    A.    Statutory Background.......................................... 4

    B.    Factual and Procedural Background. ................. 10

SUMMARY OF ARGUMENT.................................................. 15

STANDARD OF REVIEW ...................................................... 17

ARGUMENT ..................................................................... 18

I.    The False Claims Act's Public Disclosure Bar Compels Dismissal............. 18

    A.    Silbersher Fails to Allege That He Supplied the Kind of Independent Knowledge That an Original Source Must Supply.......................................................... 18

    B.    Even if "Specialized Knowledge" Could Make Him an Original Source, Silbersher Fails to Plausibly Allege That He Supplied Any ..................................... 27

    C.    Silbersher's Argument That Patent Prosecution Records Did Not Disclose the Alleged Fraud Is Waived and Meritless................. 31

II.    Silbersher Fails To State A Viable Theory Of A False Claim....................... 44

    A.    Silbersher's Promissory Fraud Theory Fails....................................... 45

B.  Silbersher's Implied False Certification Theory Fails ....................... 48

III. Silbersher's Allegations Against The Allergan Defendants Fail For Additional Reasons ........................................................................ 50

A.  Silbersher Failed to Plausibly Allege That the Allergan Defendants Committed Fraud on the Patent Office ........................... 51

B.  Silbersher Failed to Plausibly Allege That the Allergan Defendants Acted With the Requisite Scienter ................................. 54

C.  Silbersher Failed to Plausibly Allege That the Alleged Misrepresentations Were Material to the Government's Payment Decisions ........................................................................... 56

CONCLUSION ..................................................................................... 58

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*A-1 Ambulance Serv., Inc. v. California*,
  202 F.3d 1238 (9th Cir. 2000)................................................................... *passim*

*Adomitis ex rel. United States*
  *v. San Bernandino Mountains Cmty. Hosp. Dist.*,
  816 F. App'x 64 (9th Cir. 2020)..........................................................54

*Allen v. Ornoski*,
  435 F.3d 946 (9th Cir. 2006).................................................................35

*Allison Engine Co. v. U.S. ex rel. Sanders*,
  553 U.S. 662 (2008)...............................................................................45

*Amphastar Pharm. Inc. v. Aventis Pharma SA*,
  856 F.3d 696 (9th Cir. 2017)..................................................... 9, 25, 42

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)................................................................................48

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................... 17, 27

*Bank of Am. Corp. v. City of Miami*,
  581 U.S. 189 (2017)................................................................................48

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
  867 F.3d 712 (7th Cir. 2017)...............................................................40

*Bond v. United States*,
  572 U.S. 844 (2014)...................................................................... 21, 22

*Caraco Pharm. Laboratories, Ltd. v. Novo Nordisk A/S*,
  566 U.S. 399 (2012)................................................................................43

*Claiborne v. Blauser*,
  934 F.3d 885 (9th Cir. 2019)...............................................................33

*Cmty. House, Inc. v. City of Boise*,
  623 F.3d 945 (9th Cir. 2010)...............................................................34

*Coleman v. Thompson*,
501 U.S. 722 (1991)................................................................36

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980)...............................................................26

*D'Agostino v. ev3, Inc.*,
845 F.3d 1 (1st Cir. 2016) ......................................................46

*Data Engine Techs. v. Google*,
906 F.3d 999 (Fed Cir. 2008)................................................52

*Day v. McDonough*,
547 U.S. 198 (2006)...............................................................34

*Dream Palace v. Cnty. of Maricopa*,
384 F.3d 990 (9th Cir. 2004)................................... 34, 35, 37

*Duarte v. City of Stockton*,
60 F.4th 566 (9th Cir. 2023)..................................................41

*Fiskars, Inc. v. Hunt Mfg. Co.*,
221 F.3d 1318 (Fed. Cir. 2000) ..................................... 53, 56

*Freeman v. Quicken Loans, Inc.*,
566 U.S. 624 (2012)...............................................................26

*Gharibian ex rel. U.S. v. Valley Campus Pharm., Inc.*,
2023 WL 195514 (9th Cir. 2023)..........................................56

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014) ....................................... 54, 55

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
559 U.S. 280 (2010)......................................................... 7, 26

*Hamer v. Neighborhood Housing Servs. of Chi.*,
583 U.S. 17 (2017).................................................................33

*Illinois ex rel. Edelweiss Fund v. JPMorgan Chase*,
No. 2017-L-289 (Ill. Cook. Cnty. Feb. 1, 2019)..................31

*In re Howell*,
731 F.2d 624 (9th Cir. 1984) ...............................................................34

*In re Nat. Gas Royalties*,
562 F.3d 1032, (10th Cir. 2009) .........................................................19

*Jennings v. Rodriguez*,
538 U.S. 281 (2018) .............................................................................21

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
501 F.3d 1244 (11th Cir. 2007) ..........................................................19

*Parker v. Sea-Mar Cmty. Health Ctr.*,
853 F. App'x 197 (9th Cir. 2021) .................................................. 56, 57

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*,
946 F.3d 1100 (9th Cir. 2020) ............................................................36

*Prather v. AT&T, Inc.*,
847 F.3d 1097 (9th Cir. 2017) ...................................................... 18, 42

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) ...................................................................... 22, 24

*Roe v. Stanford Health Care*,
2022 WL 796798 (9th Cir. Mar. 15, 2022) .................................. 19, 30

*Roeder v. Islamic Republic of Iran*,
646 F.3d 56 (D.C. Cir. 2011) ..............................................................24

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
563 U.S. 401 (2011) ...............................................................................1

*Seal 1 v. Seal A*,
255 F.3d 1154 (9th Cir. 2001) ............................................................40

*Singleton v. Wulff*,
428 U.S. 106 (1976) .............................................................................34

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..............................................................52

*State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*,
580 U.S. 26 (2016) ........................................................................................ 6

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ..................................................................................... 20

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................... 51

*U.S. ex rel. Ambrosecchia v. Paddock Laboratories, LLC*,
855 F.3d 949 (8th Cir. 2017) ................................................................. 27, 30

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ...................................................................... 42

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .................................................................... 44

*U.S. ex rel. Campie v. Gilead Scis., Inc.*,
862 F.3d 890 (9th Cir. 2017) ............................................................ 17, 46, 50

*U.S. ex rel. Cimino v. Int'l Bus. Mach. Corp.*,
3 F.4th 412 (D.C. Cir. 2021) ...................................................................... 45

*U.S. ex rel. Doe v. Staples, Inc.*,
773 F.3d 83 (D.C. Cir. 2014) ...................................................................... 40

*U.S. ex rel. Fried v. W. Indep. Sch. Dist.*,
527 F.3d 439 (5th Cir. 2008) ...................................................................... 19

*U.S. ex rel. Haight v. Catholic Healthcare West*,
445 F.3d 1147 (9th Cir. 2006) .................................................................... 40

*U.S. ex rel. Hastings v. Wells Fargo Bank, NA*,
656 F. App'x 328 (9th Cir. 2016) ........................................................ 19, 20, 30

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) ............................................................ 45, 46, 54

*U.S. ex rel. Hong v. Newport Sensors, Inc.*,
728 F. App'x 660 (9th Cir. 2018) ................................................................ 40

*U.S. ex rel. Hopper v. Anton*,
 91 F.3d 1261 (9th Cir. 1996) ................................................................46

*U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*,
 985 F.2d 1148 (2d Cir. 1993) ...............................................................18

*U.S. ex rel. Marcus v. Hess*,
 317 U.S. 537 (1943) ..............................................................................46

*U.S. ex rel. Mateski v. Raytheon Co.*,
 816 F.3d 565 (9th Cir. 2016) ..................................................................6

*U.S. ex rel. Maur v. Hage-Korban*,
 981 F.3d 516 (6th Cir. 2020) ................................................................28

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
 812 F.3d 294 (3d Cir. 2016) ............................................................ 8, 40

*U.S. ex rel. Newell v. City of St. Paul*,
 728 F.3d 791 (8th Cir. 2013) ................................................................19

*U.S. ex rel. Ondis v. City of Woonsocket*,
 587 F.3d 49 (1st Cir. 2009) ..................................................................18

*U.S. ex rel. Osheroff v. Humana Inc.*,
 776 F.3d 805 (11th Cir. 2015) .................................................... 20, 30, 40

*U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*,
 2012 WL 2871264 (S.D. Fla. July 12, 2012) .......................................31

*U.S. ex rel. Paulos v. Stryker Corp.*,
 762 F.3d 688 (8th Cir. 2014) .......................................................... 20, 30

*U.S. ex rel. Promega Corp. v. Hoffman-LaRoche Inc.*,
 No. 03-1447-A (E.D. Va. Sept. 29, 2004) ...........................................48

*U.S. ex rel. Rahimi v. Rite Aid Corp.*,
 3 F.4th 813 (6th Cir. 2021) ...................................................................40

*U.S. ex rel. Reed v. KeyPoint Government Solutions*,
 923 F.3d 729 (10th Cir. 2019) .................................................... 20, 30, 40

*U.S. ex rel. Rose v. Stephens Inst.*,
909 F.3d 1012 (9th Cir. 2018)................................................................48

*U.S. ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023)................................................................ 23, 37, 55

*U.S. ex rel. Silbersher v. Allergan, Inc.*,
46 F.4th 991 (9th Cir. 2022)........................................................ *passim*

*U.S. ex rel. Silbersher v. Valeant Pharm. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024)................................................ 33, 38, 39

*U.S. ex rel. Solis v. Millenium Pharms., Inc.*,
885 F.3d 623 (9th Cir. 2018)................................................ 41, 42, 43

*U.S. ex rel. Solomon v. Lockheed Martin Corp.*,
878 F.3d 139 (5th Cir. 2017)................................................................40

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
14 F.3d 645 (D.C. Cir. 1994) .......................................... 6, 7, 19, 26

*U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A.*
*v. Prudential Ins. Co.*,
944 F.2d 1149 (3d Cir. 1991) ............................................ 7, 9, 10, 22

*U.S. ex rel. Vuyyuru v. Jadhav*,
555 F.3d 337 (4th Cir. 2009)................................................................28

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
827 F.3d 201 (1st Cir. 2016) ........................................................ 28, 40

*U.S. ex rel. Yagman v. Mitchell*,
711 F.App'x 422 (9th Cir. 2018)..........................................................40

*U.S. ex rel. Zizic v. Q2Administrators, LLC*,
728 F.3d 228 (3d Cir. 2013) ........................................................ 18, 22

*U.S. v. Real Prop. Located at 25445 Via Dona Christa*,
138 F.3d 403 (9th Cir. 1998)................................................................33

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
595 U.S. 178 (2022)................................................................................21

ix

*United States v. Bank of Farmington*,
166 F.3d 853 (7th Cir. 1999) ..............................................................31

*United States v. CSL Behring, LLC*,
855 F.3d 935 (8th Cir. 2017) ..............................................................40

*United States v. Kitsap Physician Serv.*,
314 F.3d 995 (9th Cir. 2002) ...................................................... 13, 44

*United States v. Lopez*,
4 F.4th 706 (9th Cir. 2021) ................................................................33

*United States v. McNinch*,
356 U.S. 595 (1958) ...........................................................................44

*United States v. Molina Healthcare of Ill., Inc.*,
17 F.4th 732 (7th Cir. 2021) ..............................................................46

*United States v. Patrin*,
575 F.2d 708 (9th Cir. 1978) ...................................................... 34, 35

*United States v. Sci. Applications Int'l Corp.*,
626 F.3d 1257 (D.C. Cir. 2010) .........................................................54

*United States v. Sineneng-Smith*,
140 S.Ct. 1575 (2020) ........................................................................34

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ...........................................................54

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016).................................................................. *passim*

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000)........................................................................4, 5

*Washington v. Dep't of State*,
996 F.3d 552 (9th Cir. 2021) ..............................................................27

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)............................................................................27

*Wood v. Milyard*,
   566 U.S. 463 (2012) ....................................................................... 33, 34

*Yates v. United States*,
   574 U.S. 528 (2015) ...........................................................................21

**Statutes**

21 U.S.C. §355(b)(1) ..........................................................................46

21 U.S.C. §355(b)(2) ..........................................................................47

21 U.S.C. §355(c)(2) ..........................................................................46

21 U.S.C. §355(j)(5) ..........................................................................47

21 U.S.C. §355(j)(7) ..........................................................................46

31 U.S.C. §3729(a) ..............................................................................5

31 U.S.C. §3729(a)(1) ..................................................................... 4, 54

31 U.S.C. §3729(b)(1) ..................................................................... 5, 54

31 U.S.C. §3729(b)(2) ..........................................................................5

31 U.S.C. §3730(a) ..............................................................................5

31 U.S.C. §3730(b)(1) ..........................................................................5

31 U.S.C. §3730(b)(2) ..........................................................................5

31 U.S.C. §3730(c)(1) ..........................................................................5

31 U.S.C. §3730(c)(3) ..........................................................................5

31 U.S.C. §3730(d) ..............................................................................5

31 U.S.C. §3730(e)(4) ................................................................. *passim*

35 U.S.C. §271(e)(2) ..........................................................................47

**Rules and Regulations**

Fed. R. Civ. P. 9(b) ........................................................................... 18

37 C.F.R. §1.56(a) ................................................................53

37 C.F.R. §1.98(d) ......................................................... 53, 54

48 C.F.R. §15.404-1 .............................................................49

48 C.F.R. §8.402 ............................................................... 49

**Other Authorities**

145 Cong. Rec. E1546-01, 1999 WL 495861 (July 14, 1999) ..................................8

Appellant's Principal Br., *Roe v. Stanford Health Care*, No. 20-55874
  (9th Cir. filed May 16, 2021) ............................................... 30

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ................................ 20, 22

Brief for the United States as Amicus Curiae, *U.S. ex rel. Campie
  v. Gilead Scis., Inc.*, No. 15-16380 (9th Cir. filed Jan. 15, 2016)......................46

False Claims Act Correction Act, S. 2041, 110th Cong., 1st Sess.
  (2007) ................................................................................8

General Services Administration Acquisition Manual (2017)................................49

H.R. 4854, 110th Cong., 1st Sess. (2007)................................................8

John T. Boese & Douglas W. Baruch, Civil False Claims & Qui Tam
  Actions (5th ed. 2021) ...............................................................8

Response to Rehearing Petition, *U.S. ex rel. Silbersher v. Valeant
  Pharm. Int'l*, No. 20-16176 (9th Cir. filed Oct. 25, 2023) ................... 35, 36, 40

Webster's Third New Int'l Dictionary (1993)...........................................22

## INTRODUCTION

This novel *qui tam* suit brought by a serial relator is the epitome of the kind of "opportunistic" lawsuit that the False Claims Act is supposed to "discourage." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 413 (2011). Congress long ago recognized that the promise of a sizable bounty could invite abuse of the FCA's *qui tam* provisions. To deter such abuse, the FCA contains a public disclosure bar that precludes relators from bringing *qui tam* suits based on information they obtained just by perusing certain widely available public sources. That is precisely what relator Zachary Silbersher did here (and in two similar cases): He went on the website maintained by the U.S. Patent & Trademark Office, browsed the agency's official records of decade-old patent prosecution proceedings, and purports to have discovered lurking in plain sight a multi-billion-dollar fraud. The FCA prohibits that opportunistic suit.

Under the FCA's public disclosure bar, a *qui tam* suit must be dismissed if it is based on facts that were publicly disclosed through a "Federal … hearing" unless "the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4). This Court has already concluded that the documents on which Silbersher bases his claims were publicly disclosed in a "Federal … hearing"— namely, a patent prosecution proceeding. *U.S. ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991, 999 (9th Cir. 2022). On remand, the district court determined that

Silbersher is not an "original source" of the information in his complaint because he did not provide any new information of his own; he just repurposed information already in the public domain. Silbersher's lawsuit is thus foreclosed by the public disclosure bar.

Silbersher concedes that his complaint is not based on personal knowledge of non-public facts about the alleged fraud. He nevertheless insists that he qualifies as an "original source" because he used his knowledge of the ways that drug patents, approvals, and prices interact to uncover the purported fraud. But this Court has repeatedly held that the kind of "knowledge" a relator must possess to qualify as an "original source" is substantive information about the alleged fraud. "If a relator merely uses his or her unique experience or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed." *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000). While those decisions interpreted the pre-2010 version of the public disclosure bar, nothing in the 2010 amendments altered that understanding, as multiple courts, including this Court, have confirmed.

It is little surprise, then, that Silbersher leads off with an entirely different argument, insisting that the facts underlying his claim were *not* actually disclosed in the patent prosecution proceedings. But Silbersher already tried that argument in his first appeal to this Court only to be rebuffed on waiver grounds, as he expressly

2

conceded the opposite in district court years ago. Silbersher identifies nothing that would remotely justify excusing his affirmative waiver at this late date. And in all events, the argument he seeks to resuscitate yet again is meritless.

On top of all that, Silbersher has not identified anything close to a legally viable claim under the FCA. His claims arise out of the government's purchase (over the course of several years) of billions of dollars of Alzheimer's drugs. Silbersher does not claim that Allergan failed to provide the government the drugs it purchased, misrepresented the nature of the drugs, or charged the government more for the drugs than it charged other purchasers. Instead, he advances the convoluted theory that Allergan "fraudulently" obtained patents for the drugs because it failed to disclose certain information to the PTO, then used its purportedly ill-gotten patents to charge the public "monopoly" prices, then used those monopoly prices to mislead the government into agreeing to pay "inflated" prices, hence rendering all claims for payment for the drugs "false." On that basis, Silbersher claims that the government (which declined to join this suit) suffered billions of dollars in damages, entitling him, as the relator, to hundreds of millions (or more). That exceedingly strained theory of a false claim would convert the FCA into exactly the kind of "all-purpose antifraud statute" that the Supreme Court has repeatedly admonished it is not. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016).

In short, Silbersher has not even stated a claim, let alone stated one that could survive the FCA's public disclosure bar. This Court should affirm.

## STATEMENT OF JURISDICTION

Allergan agrees with Silbersher's statement of jurisdiction.

## STATEMENT OF THE ISSUES

1. Whether the FCA's public disclosure bar precludes Silbersher's *qui tam* suit.

2. Whether Silbersher has adequately pleaded the elements of a FCA violation.

## STATUTORY PROVISIONS

Relevant statutory provisions are reproduced in the addendum.

## STATEMENT OF THE CASE

### A. Statutory Background

Congress passed the FCA in 1863 "with the principal goal of 'stopping the massive frauds perpetrated by large private contractors during the Civil War.'" *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 781 (2000). As relevant here, the Act renders liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government, as well as anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §3729(a)(1)(A)-(B). The Act defines "claim" to include requests for money

4

"presented to an officer, employee, or agent of the United States" or "made to a contractor, grantee, or other recipient" of federal funds "if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest." *Id.* §3729(b)(2)(A)(i)-(ii). It defines "knowingly" to mean that a person "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." *Id.* §3729(b)(1)(A)(i)-(iii).

Liability under the FCA is "essentially punitive in nature." *Vt. Agency*, 529 U.S. at 784. The Act imposes a mandatory civil penalty and treble damages for each violation. 31 U.S.C. §3729(a). Lawsuits to collect those penalties and damages may be brought by the Attorney General or by a private person, known as a "relator," in the name of the United States through a *qui tam* action. *Id.* §§3730(a), (b)(1). A *qui tam* complaint must be filed under seal and delivered to the United States, which has 60 days to decide whether to intervene. *Id.* §3730(b)(2). If it does, it "shall have the primary responsibility for prosecuting the action." *Id.* §3730(c)(1). If it does not, the relator may pursue the case independently. *Id.* §3730(c)(3). Either way, if the *qui tam* action results in damages or civil penalties (whether by award or settlement), the government and the relator split them, with the relator receiving up to 30%. *Id.* §3730(d).

Cognizant that the Act's "generous *qui tam* provisions" invite potential "abuse," *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994), Congress has enacted "a number of restrictions" on *qui tam* suits over the years, *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 29 (2016). One key restriction is the public disclosure bar, which is designed to discourage "parasitic exploitation of the public coffers," *Springfield*, 14 F.3d at 649, by plaintiffs who have "no significant information of their own to contribute," *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016), and instead seek to "repackag[e] information enumerated in the public disclosure bar for personal profit," *Allergan*, 46 F.4th at 994.

Congress enacted the first public disclosure bar in 1986. It provided:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. §3730(e)(4)(A) (1986) (footnote omitted).

6

The 1986 bar struck "a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 295 (2010). On the one hand, Congress sought to "encourage more private enforcement suits," *Springfield*, 14 F.3d at 651, particularly by whistleblowing insiders "with first-hand knowledge of fraudulent misconduct," *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991). On the other hand, Congress expanded barriers to suits based on information in the public domain by eliminating the previous requirement that the information be in the government's possession. *See* Act of Dec. 23, 1943, 57 Stat. 609 (codified at 31 U.S.C. §232(C) (1946)) (barring any *qui tam* suit "based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought"). Suits were instead barred if they were based on information publicly disclosed in a source enumerated in subsection (A).

Over the next few decades, a few members of Congress occasionally expressed concern that the 1986 amendments and judicial decisions interpreting them were too restrictive of *qui tam* suits. Senator Charles Grassley and Representative Howard Berman sent a letter to the Attorney General in 1999 expressing their view that a relator "who uses their education, training, experience, or talent to uncover a fraudulent scheme from publicly available documents, should

be allowed to file a *qui tam* action." 145 Cong. Rec. E1546-01, at E1547, 1999 WL 495861 (July 14, 1999). And in 2007, they introduced bills that "rewrote virtually every section of the Act, and even eliminated major provisions altogether." John T. Boese & Douglas W. Baruch, Civil False Claims & Qui Tam Actions §1.08[A] (5th ed. 2021); *see* False Claims Act Correction Act, S. 2041, 110th Cong., 1st Sess. (2007); H.R. 4854, 110th Cong., 1st Sess. (2007). "For all practical purposes," their rewrite "would have eliminated the public disclosure … bar." Boese & Baruch, §1.08[A][2]. But their efforts to radically revise the FCA failed.

Instead, in 2010, Congress (over Senator Grassley's objection) made a few modest modifications to the public disclosure bar, including its "original source" definition, as part of the Affordable Care Act. The 2010 amendments arrived in a short section inserted in that massive healthcare reform law with virtually "no direct legislative history" tied to them specifically. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 (3d Cir. 2016). In its present, amended form, the public disclosure bar provides:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. §3730(e)(4) (footnote omitted).

Congress's amendments to the "original source" definition track an issue that had arisen in the courts. Under the pre-2010 definition, an original source had to have "direct and independent knowledge" of the information on which the claim was based. 31 U.S.C. §3730(e)(4)(B) (1986). And courts had interpreted the word "direct" to require "firsthand knowledge of the alleged fraud obtained by the relator's own labor." *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 702 n.8 (9th Cir. 2017). In other words, it was not enough to possess non-public information about the fraud; the relator had to show that she did not receive the information from an intermediary. *See Stinson*, 944 F.2d at 1160-61.

In the amended definition, Congress dropped the word "direct," instead requiring the relator to have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. §3730(e)(4)(B). By

9

doing so, Congress shifted the focus from whether the relator's knowledge is "firsthand" to whether the relator's knowledge "materially adds to" what was publicly disclosed. But Congress retained the "independent" knowledge requirement—which courts had uniformly interpreted to require knowledge of "substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation." *Stinson*, 944 F.2d at 1160. As this Court explained: "If a relator merely uses his or her unique experience or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed." *A-1 Ambulance*, 202 F.3d at 1245.

### B.    Factual and Procedural Background.

1. In May 2018, Silbersher filed this *qui tam* suit against Allergan, Adamas, and various subsidiaries and affiliates in the name of the United States, 28 states, and the District of Columbia. The United States and all 29 other governments declined to intervene. Silbersher's claims are based on the novel and highly attenuated theory that representations various Defendants made to the PTO during decade-old patent prosecutions for Namenda XR and Namzaric, two drugs used to treat Alzheimer's disease, rendered every subsequent government purchase of and reimbursement for those drugs the result of a "false claim." Silbersher does not claim that there is anything wrong with the drugs or that any Defendant failed to

deliver them as promised. He instead claims that Defendants leveraged allegedly ill-gotten patents to cause the government (and virtually everyone else who purchased the drugs) to overpay.

The bulk of Silbersher's allegations center on the so-called "Went Patents," a series of 11 patents named after Adamas's then-CEO and founder, Dr. Gregory Went. Silbersher alleges that Went misrepresented scientific findings that the Adamas Defendants used to support applications for the patents. ER152-63 ¶¶58-90. According to Silbersher, Went submitted multiple declarations to the PTO that misrepresented the results of the "ME110 Study" by claiming that subjects who received an extended-release formulation of memantine (the active ingredient in the drugs) experienced "no incidence" of central nervous system side effects. According to Silbersher, the study actually demonstrated that two of the 24 test subjects experienced such side effects. ER155-56 ¶¶67-69. Silbersher alleges that Went knew that his declaration was false because he later submitted a declaration to the PTO while prosecuting a different patent application that claimed that the ME110 Study demonstrated "little incidence" (as opposed to "no incidence") of central nervous system side effects. *Id.* According to Silbersher, the PTO would not have approved the Went Patents had it known of that purported discrepancy. ER161-62 ¶84. Silbersher's allegations were not new. Four years before he filed his *qui tam* complaint, a generic pharmaceutical company called Amneal Pharmaceuticals made

virtually identical allegations in a court filing after it was sued for patent infringement.  1-SER-105-23 ¶¶4-50.  Adamas later disclosed those allegations to the PTO while prosecuting two related patent applications.  1-SER-34.

Silbersher also alleges that Forest Laboratories (which later became an Allergan subsidiary) misled the PTO while prosecuting the 8,039,009 Patent, which claims a "method of treating Alzheimer's disease" with a "once daily administration" of memantine.  ER163 ¶91.  According to Silbersher, Forest made insufficient efforts to draw the PTO's attention to the '553 Patent, which allegedly would have foreclosed the '009 Patent on obviousness grounds.  ER164 ¶93.  Silbersher concedes that Forest submitted the '553 Patent at "an earlier phase of the prosecution" of the '009 Patent, but he claims that the Examiner "would not have … considered" it at that time (even though the Examiner's report says he did, 2-SER-454).  ER164 ¶¶96-97.  Silbersher maintains that Forest had a duty to re-flag the '553 Patent when it amended its claims several months later and intentionally misled the PTO by failing to do so.  *Id.*

According to Silbersher, these alleged frauds on the PTO wrongfully enabled Defendants to temporarily block generic competitors and charge "monopoly" prices.  That, in turn, allegedly "inflated" the market prices Defendants submitted to federal officials to assist them in determining what price the government would pay for the drugs.  That, in turn, allegedly led those officials to agree to prices that were too

high. And that, in turn, allegedly rendered "false" all claims for reimbursement at those prices, purportedly resulting in billions of dollars in damages to the government and entitling Silbersher, as relator, to a cut in the hundreds of millions.

There are many problems with that theory, not the least of which is that Silbersher fails to allege any purportedly "false" representation that is even remotely connected to any "claim for payment." *United States v. Kitsap Physician Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (an "actual false claim is 'the *sine qua non* of a False Claims Act violation'"). But Silbersher's claims suffer from a threshold problem: He obtained the information on which they are based from official records of patent prosecution proceedings that the PTO publicly disclosed. Silbersher, who is a patent attorney, has a habit of bringing *qui tam* suits based on information he obtained from publicly available governmental sources. This is one of three such suits. *See U.S. ex rel. Silbersher v. Valeant Pharm. Int'l, Inc.*, No. 3:18-cv-1496 (N.D. Cal. filed Mar. 8, 2018); *U.S. ex rel. Silbersher v. Janssen Biotech, Inc.*, No. 2:19-cv-12107 (D.N.J. filed May 3, 2019).

2. Defendants moved to dismiss on grounds that Silbersher's claims are foreclosed by the FCA's public disclosure bar and fail to plausibly allege cognizable false claims. The district court denied the motions. As to the public disclosure bar, the court acknowledged that "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in the prosecution records the

PTO published before Silbersher filed his complaint. 31 U.S.C. §3730(e)(4)(A). Indeed, Silbersher's attorney conceded at the motion-to-dismiss hearing that the prosecution records disclosed "the relevant information from which the inference of fraud could be drawn." ER131. But the court nevertheless held that the bar did not apply, on the theory that a patent prosecution proceeding is not a "Federal report, hearing, audit, or investigation." ER78-92.

The district court also held that Silbersher plausibly alleged false claims. Although the FCA imposes liability only for "false or fraudulent claims," the court opined that the Act should be construed broadly to impose liability for claims "that are not explicitly and/or independently false." ER109. Thus, notwithstanding that Silbersher has not alleged that Defendants submitted a claim to the government containing inaccurate prices or seeking payment for something they did not provide, the court held that Silbersher plausibly alleged false claims under "promissory fraud" and "implied false certification" theories. ER112-16. The court then went on to reject the Allergan Defendants' distinct arguments for dismissal. ER120.

3. The district court certified its order for interlocutory appeal. This Court granted Defendants' petition for permission to appeal and reversed, holding that a patent prosecution proceeding is a "Federal … hearing" covered by the public disclosure bar. *See Allergan*, 46 F.4th at 997. The Court declined to address Silbersher's argument that the public disclosures were not substantially the same as

his allegations, concluding that he waived that argument in district court. *Id.* at 996 n.6. The Court left it to the district court to determine in the first instance whether Silbersher is an "original source." *Id.* at 1000. And because the Court "reversed on the public disclosure bar," it found no need to decide whether Silbersher plausibly alleged a false claim. *Id.* at 1000 n.8.

4. On remand, the district court determined that Silbersher is not an original source. The court explained that, under longstanding Ninth Circuit precedent, an original source must provide historical facts about the alleged fraud, not specialized expertise that helps him piece together fraud from the public domain. ER24. And while those precedents interpreted the pre-2010 bar, the court concluded that nothing in the 2010 amendments altered that requirement. ER24.

## SUMMARY OF ARGUMENT

The FCA's public disclosure bar compels dismissal of a relator's complaint if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in (among other things) a "Federal report, hearing, audit, or investigation" unless the relator is an "original source of the information." 31 U.S.C. §3730(e)(4)(A). This Court has already concluded that the documents on which Silbersher bases his claims were publicly disclosed in a "Federal ... hearing." *Allergan*, 46 F.4th at 999. And on remand, the district court determined that Silbersher is not an "original source" because he did not provide any new

information of his own; he just repurposed information already in the public domain. That conclusion was eminently correct. This Court has long held that to qualify as an original source, a relator must contribute genuinely new information about the facts of the alleged fraud, not just expertise that helps him piece together fraud from information in the public domain. Nothing in the 2010 amendments to the public disclosure bar changed that longstanding rule, which forecloses Silbersher's claims.

It is little surprise, then, that Silbersher tries to inject an entirely different argument into this appeal, insisting that the patent prosecution records do not disclose "substantially the same allegations and transactions" as his complaint. But Silbersher waived that argument years ago when he explicitly conceded, in response to direct question from the district court, that publicly available records of patent prosecution proceedings disclosed all the key facts underlying his complaint. Indeed, this Court already held as much when Silbersher tried to resuscitate that argument in his first appeal, and Silbersher identifies no reason to disturb that settled law of the case. The Court is not free to excuse a deliberate waiver, and even if it were, it certainly should not do at the behest of a party who consciously chose to disavow in one case an argument that he was simultaneously pressing in another. In all events, Silbersher's much-belated argument is meritless, which likely explains why he disavowed it years ago.

Even if Silbersher's claims could survive the public disclosure bar, there are several alternative grounds on which this Court can and should affirm. Most notably, Silbersher's claims suffer from the fundamental problem that they fail to state a viable FCA claim. His attempt to piggyback a false claim onto representations made during decade-old patent prosecutions runs head-on into the Supreme Court's repeated admonitions that the FCA is not an "all-purpose antifraud statute." *Escobar*, 579 U.S. at 194. His implied false certification theory fails because Defendants never even made the "certification" that he claims is "false." And he has not plausibly alleged several critical elements against the Allergan Defendants in particular. This Court thus should recognize and reject this lawsuit for what it is: an opportunistic attempt by a serial relator to take advantage of the FCA's generous bounty provisions.

## STANDARD OF REVIEW

This Court reviews motion-to-dismiss rulings de novo. *See U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898 (9th Cir. 2017). To survive a motion to dismiss under Rule 12(b)(6), a complaint's factual allegations must support "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Because FCA claims sound in fraud, they must also meet Rule

9(b)'s heightened pleading standard, "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## ARGUMENT

### I. The False Claims Act's Public Disclosure Bar Compels Dismissal.

#### A. Silbersher Fails to Allege That He Supplied the Kind of Independent Knowledge That an Original Source Must Supply.

An "original source" is someone "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. §3730(e)(4)(B). Silbersher does not claim to have based his complaint on personal knowledge of any historical facts that were not publicly revealed. He instead argues that he qualifies as an original source because he purportedly used his "specialized knowledge" of patent law to discern a fraud from facts disclosed in those public documents. But this Court has repeatedly rejected the notion that using "expertise" to "formulate [a] novel legal theory of fraud" from public facts makes a relator an original source. *A-1 Ambulance*, 202 F.3d at 1245; *see also, e.g.*, *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1105 (9th Cir. 2017). So has every other court of appeals to consider the issue.[1] "If a relator merely

---

[1] *See, e.g.*, *U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 59 (1st Cir. 2009); *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993); *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 240 (3d Cir. 2013); *U.S. ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 443 (5th Cir.

uses his or her unique experience or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed." *A-1 Ambulance*, 202 F.3d at 1245.

To be sure, many of those decisions interpreted the pre-2010 definition of "original source." But nothing in the 2010 amendments alters the rule that the "knowledge" the relator provides must be substantive information about the fraud, not specialized expertise or background knowledge that helps him discern a purported fraud lurking in plain sight. The 2010 amendments eliminated the requirement that the relator possess "direct"—i.e., "firsthand"—knowledge of the information on which the allegations are based, making clear that secondhand knowledge can suffice. *See supra* pp.9-10. But Congress did not change the *kind* of "knowledge" one must provide to qualify as an original source, as this Court has repeatedly recognized. *See, e.g.*, *Roe v. Stanford Health Care*, 2022 WL 796798, at *1 (9th Cir. Mar. 15, 2022); *U.S. ex rel. Hastings v. Wells Fargo Bank, NA*, 656 F. App'x 328, 331-32 (9th Cir. 2016). Silbersher tries to wave away those cases as unpublished and unreasoned, Silbersher.Br.66-67, but the fact that multiple panels of this Court have continued to interpret "original source" the same way without

---

2008); *U.S. ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 798 (8th Cir. 2013); *In re Nat. Gas Royalties*, 562 F.3d 1032, 1045 (10th Cir. 2009); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1254 (11th Cir. 2007); *Springfield*, 14 F.3d at 645 (D.C. Cir.).

even feeling the need to publish their decisions speaks volumes. And this Court hardly stands alone. Other courts of appeals have done so too—including in published opinions. *See, e.g.*, *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 815 (11th Cir. 2015); *U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 694-95 (8th Cir. 2014); *U.S. ex rel. Reed v. KeyPoint Government Solutions*, 923 F.3d 729, 758-59 (10th Cir. 2019) (quoting *Hastings*, 656 F. App'x at 331-32).

Undeterred by this wall of precedent, Silbersher insists that his "specialized knowledge" of patent law qualifies as "knowledge" under the "plain meaning of the term." Silbersher.Br.45-46. But as court after court recognized in rejecting similar arguments before the 2010 amendments, that ignores the bedrock rule that the "ordinary meaning" of a word "must be read and interpreted in [its] context, not in isolation." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). After all, "[a]dhering to the *fair meaning* of the text (the textualist's touchstone) does not limit one to the hyperliteral meaning of each word in the text." Antonin Scalia & Bryan A. Garner, *Reading Law* 356 (2012). "The full body of a text contains implications that can alter the literal meaning of individual words." *Id.* Courts thus routinely reject "uncritical literalism" when interpreting statutes. *Jennings v. Rodriguez*, 538

U.S. 281, 293-94 (2018) (plurality op.); *see also, e.g.*, *Yates v. United States*, 574 U.S. 528, 536-37 (2015); *Bond v. United States*, 572 U.S. 844 (2014).[2]

In fact, this Court rejected Silbersher's resort to "uncritical literalism" the first time this case reached it. There, Silbersher insisted that the phrase "administrative hearing" should be read literally to cover virtually all hearings held by administrative agencies, and that limiting that phrase to "adversarial" proceedings would impermissibly add words to the statute. The Court rejected those arguments, explaining that proper statutory interpretation requires considering the "'entire text' read as an 'integrated whole.'" *Allergan*, 46 F.4th at 997. And the broader context made clear that the phrase "administrative hearing" does not reach the entire universe of administrative hearings, but only adversarial ones. *Id.* at 998-99.

Here, all manner of contextual clues confirm that the "knowledge" the relator must provide remains substantive information about the fraud, not subject matter expertise that helps the relator understand the significance of public information. Start with the term "original source," which Congress retained in the 2010 amendments. The "meaning of the definition is almost always closely related to the

_____

[2] Silbersher's attempt to invoke the Court's interpretation of the word "knowledge" in the Copyright Act therefore gets him nowhere. *See* Silbersher.Br.46 (quoting *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 184 (2022)). "In law as in life," the "same words, placed in different contexts, sometimes mean different things." *Yates*, 574 U.S. at 537.

ordinary meaning of the word being defined." *Reading Law* 228; *see also Bond*, 572 U.S. at 861 (considering "the ordinary meaning of a defined term"). And "original source" is most naturally understood to refer to someone who supplies new facts. Whistleblowing insiders are "sources" in ordinary parlance because they furnish new facts that the public does not already know. *See* Webster's Third New Int'l Dictionary 1592, 2177 (1993) (defining "source" as "one that supplies information" and "original" as "new"). By contrast, few would describe someone who (like Silbersher) does not contribute any new facts, and merely concocts a theory of wrongdoing based on what is already known, as an "original source." As one court of appeals put it, if "background information which enables a putative relator to understand the significance of a publicly disclosed transaction … were enough to qualify the relator as an 'original source,' then a cryptographer who translated a ciphered document in a public court record would be an 'original source,' an unlikely interpretation of the phrase." *Stinson*, 944 F.2d at 1160.

That reading is reinforced by considering what the relator must be an "original source" of. Subsection (A) continues to specify that a relator must be an "original source *of the information*," 31 U.S.C. §3730(e)(4)(A) (emphasis added), a phrase that the Supreme Court has held refers to the "information underlying the allegations of the relator's action." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 472 (2007); *see also Zizic*, 728 F.3d at 239 ("The word 'information' … refers to the facts

on which the relator's allegations are based.").  And subsection (B) continues to require the relator to "provide[] the information to the Government before filing an action."  31 U.S.C. §3730(e)(4)(B).  Surely the information one would expect a relator to be the "original source" of and provide "to the Government" is new *factual* information, not the relator's theories as to the legal implications of publicly disclosed facts based on his "expertise" in patent law.  After all, a relator who relays non-public facts about an alleged fraud contributes something genuinely new.  One who merely contributes his "expertise" in patent law provides the government with something it (via the PTO) already has in spades.  Silbersher insists that the word "information" *could* refer to "all 'knowledge obtained from investigation, study, or instruction.'"  Silbersher.Br.51-53 (citing *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 n.4 (2023)).  But the question is not whether Silbersher's expertise is "information" in the abstract sense; it is whether it is "the information" that Congress wanted relators to be the "original source" of and provide "to the Government before filing an action."  31 U.S.C. §3730(e)(4)(A)-(B).

Silbersher notes that the first prong of the original source definition refers to "information on which allegations or transactions in a claim are based," and insists that Congress's decision not to repeat that phrase in the second prong must mean that it meant to sweep in every kind of knowledge—including specialized expertise in patent law.  Silbersher.Br.48-49.  But "the strength of th[e] presumption" that

Congress acts intentionally when it includes language in one part of statute and excludes it from another "varies with context." *Roeder v. Islamic Republic of Iran*, 646 F.3d 56, 62 (D.C. Cir. 2011). And the Supreme Court has already held that the presumption carries little weight here. In *Rockwell*, several courts of appeals had held that Congress's use of the phrase "the information on which the allegations are based" in subsection (B) of the 1984 bar must mean that the phrase "the information" in subsection (A) covered something other than information underlying the relator's allegations. 549 U.S. at 472. The Court squarely rejected that position, holding that context and common sense confirmed that "'information' in subparagraph (A) and 'information on which the allegations are based' in subparagraph (B) are one and the same, viz., information underlying the allegations of the relator's action." *Id*. Here, too, context and common sense confirm that the kind of "knowledge" the relator must bring to bear is knowledge of the underlying fraud.[3]

This Court's long-standing interpretation of the word "independent" in the FCA—which the relator's "knowledge" must still be after the 2010 amendments, *see* 31 U.S.C. §3730(e)(4)(B)—reinforces that conclusion. "To prove 'independent'

---

[3] While Silbersher observes that it would have been clearer for Congress to use the phrase "knowledge of the defendant's conduct," one could say the same of his interpretation. After all, if Congress really wanted to sweep in every kind of knowledge, thereby abrogating decades of settled precedent, it could have used the words "any knowledge."

knowledge, relators have to show they had relevant 'evidence of fraud prior to the public disclosure.'" *Amphastar*, 856 F.3d at 705. That inquiry makes sense only if what the relator must know is historical facts underlying the fraud. If the relator learns facts about the fraud after it is publicly disclosed, the obvious inference is that the relator's knowledge is derivative of the public disclosure and hence not "independent." But it makes no sense to ask whether the relator's knowledge "preceded the public disclosure" if the relevant knowledge is the relator's "expertise." Indeed, interpreting "knowledge" to include specialized expertise would render the "independent" requirement superfluous, as virtually any relator can claim to possess *some* sort of background knowledge or industry expertise that is "independent" of the publicly disclosed facts.

Silbersher insists that his interpretation better aligns with the views of "the public disclosure bar's architects," who thought that those who use "their education, training, experience, or talent to uncover a fraudulent scheme from publicly available documents, should be allowed to file a *qui tam* action." Silbersher.Br.54. But his main support for that claim is a letter written by Senator Grassley and Representative Berman in 1999—more than a decade after the original source provision was first enacted and more than a decade before the 2010 amendments. *See* Silbersher.Br.54. If "[t]he contemporaneous remarks of a single legislator who sponsors a bill are not controlling," *Consumer Prod. Safety Comm'n v. GTE*

*Sylvania, Inc.*, 447 U.S. 102, 118 (1980), the remarks of two legislators divorced by a decade from any relevant legislative action carry no weight at all. *See Graham Cnty.*, 559 U.S. at 298 (finding same letter "of scant or no value" in interpreting 1986 bar). If anything, the 1999 letter is better evidence of the approach Congress did *not* adopt. After all, when Senator Grassley and Representative Berman tried to revise the FCA to codify their preferred approach, Congress *rejected* their proposal in favor of far more modest reforms—over Senator Grassley's objection. *See supra* pp.7-8.

In all events, Silbersher's argument ignores the principle that "no legislation pursues its purposes at all costs." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012). That caution carries particular weight here given the competing interests Congress confronted in the FCA. While Congress no doubt wanted to encourage citizens to help "detect[] and redress[] complex and novel frauds," Silbersher.Br.55, it also recognized that the FCA's "generous *qui tam* provisions" invite potential "abuse," *Springfield*, 14 F.3d at 649. That is why the public disclosure bar has always struck a balance "between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty.*, 559 U.S. at 295. And courts have consistently and universally concluded that the balance tilts in favor of prohibiting opportunistic relators from seeking windfalls by using "unique experience or training to conclude that the material elements already in the public domain constitute a false claim." *A-1 Ambulance*, 202 F.3d at 1245. It is exceedingly

unlikely that Congress meant to override that long-standing consensus via a short section inserted in the massive Affordable Care Act with no legislative history to speak of. *See Washington v. Dep't of State*, 996 F.3d 552, 562 (9th Cir. 2021). Congress "does not alter the fundamental details of a regulatory scheme in … ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

### B. Even if "Specialized Knowledge" Could Make Him an Original Source, Silbersher Fails to Plausibly Allege That He Supplied Any.

Even if "specialized knowledge" could make someone an original source, Silbersher's complaint fails to explain what "specialized knowledge" he purportedly supplied, let alone how it "materially add[ed] to the publicly disclosed allegations or transactions." 31 U.S.C. §3730(e)(4)(B). He just conclusorily asserts that his "independent research and investigation has generated information that is independent of, and materially adds to, any publicly-disclosed allegations and transactions." ER141 ¶9; ER143 ¶22. That assertion is implausible on its face since Silbersher obviously copied a good chunk of his complaint from Amneal's publicly filed answer. *Compare* ER152-63 ¶¶58-90 *with* 1-SER-105-23 ¶¶4-50. But that aside, merely parroting the legal standard is not enough. *See Iqbal*, 556 U.S. at 678; *U.S. ex rel. Ambrosecchia v. Paddock Laboratories, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (affirming dismissal where relator "conclusorily allege[d] that she ha[d] independent knowledge that materially add[ed] to publicly available information but

d[id] not provide more").[4]  And Silbersher's efforts to make up for his pleading deficiencies in his brief are far too little far too late.

An "addition is material if it is of such a nature that knowledge of the item would affect a person's decision-making, or if it is significant, or if it is essential." *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016). "As the level of detail in public disclosures increases, the universe of potentially material additions shrinks." *Id.*  The "relator must bring something to the table that would add value for the government." *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 527 (6th Cir. 2020).  Silbersher's professed contributions do not meet that mark.

Silbersher first argues that his purported expertise "enabled him to provide the Government 'a critical fact necessary for scienter: defendants took conflicting positions in their patent prosecutions of two separate patent applications.'" Silbersher.Br.61, 69.  But Amneal had already made the same allegation long before Silbersher filed this lawsuit.  1-SER-105-23 ¶¶4-50.  As that confirms, even if he uncovered that purported conflict through his own research (rather than simply

---

[4] Silbersher's complaint also fails to substantiate his conclusory assertion that he "voluntarily provided the information on which" his claims "are based to the Federal Government and the Plaintiff States before filing this action."  ER141 ¶10; ER143 ¶22; s*ee U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 354 (4th Cir. 2009) (affirming dismissal when relator failed to allege that "he informed the FBI or any federal agency" of alleged false claim).

relying on Amneal's publicly filed answer), *see* Silbersher.Br.70, it takes no special expertise to read two public documents and conclude that they say different things.[5]

Silbersher next insists that, without his expertise, "it would not have been possible to conclude … that these patents specifically (as opposed to others) were preventing generic competitors from entering the market." Silbersher.Br.68-69. But the Went Patents and the '009 Patent are listed in the FDA's Orange Book, and it does not take any special expertise (and certainly not any expertise the government lacks) to read the Orange Book and see which patents protect which drugs. Silbersher argues that his expertise enabled him to conclude that the alleged fraud on the PTO "led to the presentment of false claims for payment to government health care programs." Silbersher.Br.69. But his (strained) theory of a false claim just capitalizes on how federal regulation of drug patents and drug reimbursements works, which is hardly a mystery to the government. And to the extent Silbersher claims that his understanding of "government health care programs" is his value add, Silbersher.Br.69, a relator's "familiar[ity] with the regulatory framework underlying

---

[5] To the extent Silbersher claims that his value add was knowing "where to look," Silbersher.Br.60, this Court (and every other court of appeals that has considered the issue) regularly applies the public disclosure bar even when the alleged fraud is disclosed piecemeal through multiple different sources. *See infra* pp.39-40. If knowing "where to look" were enough to make a relator an original source, then all those cases would have come out the other way.

Medicare reimbursement" does not "materially add to" publicly disclosed information. *Ambrosecchia*, 855 F.3d at 955.

This Court has routinely rejected similar claims that "expertise" and "background information" "materially add[ed] to" publicly disclosed allegations. In *Roe*, for example, the relator argued that her "skills and certification" and "original data analysis" helped her "connect[] the dots" and uncover the alleged fraud while analyzing "Medicare raw data." Appellant's Principal Br. 50-56, No. 20-55874 (9th Cir. filed May 16, 2021). The Court concluded that "Roe's specialized expertise" did not "materially add[] to" the public disclosures. 2022 WL 796798 at *1. Similarly, in *Hastings*, the Court held that "[a]llegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud." 656 F.App'x at 331-32. And other courts of appeals have reached similar conclusions. *See, e.g., Osheroff*, 776 F.3d at 815 ("background information that helps one understand or contextualize a public disclosure" does not "materially add to" what is in the public domain); *Paulos*, 762 F.3d at 694-95 ("personal insight on the science behind chondrolysis" did not "materially add to" public disclosures); *Reed*, 923 F.3d at 758-59 ("background information and details relating to the alleged fraud" is not enough).

The best Silbersher can muster against that overwhelming consensus is an Illinois trial court decision interpreting the Illinois False Claims Act. And even that

30

decision simply held that the public information "did not publicly disclose" the fraud. *Illinois ex rel. Edelweiss Fund v. JPMorgan Chase*, No. 2017-L-289, at 11-12 (Ill. Cook. Cnty. Feb. 1, 2019). Silbersher also cites *U.S. ex rel. Osheroff v. Tenet Healthcare*, 2012 WL 2871264 (S.D. Fla. July 12, 2012), and *United States v. Bank of Farmington*, 166 F.3d 853 (7th Cir. 1999), but even he concedes that the language he invokes is dicta. Thus, even assuming "expertise" could qualify as "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," 31 U.S.C. §3730(e)(4)(B), Silbersher failed to plausibly allege that he supplied anything that fits that bill.

### C. Silbersher's Argument That Patent Prosecution Records Did Not Disclose the Alleged Fraud Is Waived and Meritless.

With no viable argument that he is an original source, Silbersher tries to reopen the question of whether the PTO proceedings that this Court has now held qualify as an "Federal … hearing" disclosed "substantially the same allegations or transactions as alleged in" his complaint. 31 U.S.C. §3730(e)(4)(A); *see Allergan*, 46 F.4th at 999. But Silbersher already tried that tack in his first appeal, only to be rebuffed by this Court, which held that he waived that argument below. *See Allergan*, 46 F.4th at 996 n.6. Silbersher identifies no reason to disturb that law of the case. And in all events, his waived argument is meritless.

1. Allergan argued in its initial motion to dismiss that publicly available patent prosecution records disclosed all the relevant information underlying Silbersher's

31

complaint.  Silbersher did not contest that argument in his opposition.  The district court therefore recognized at the motion-to-dismiss hearing that "there doesn't seem to be any dispute that all of the material facts regarding the fraud are disclosed in publicly-available materials on the PAIR website in those—in the patent prosecution files." ER131.  To confirm that understanding, the court asked Silbersher's attorney point blank: "So you think there are material facts regarding the fraud; that is to say, the fraud on PTO, which are not in the patent prosecution history?" *Id.*  Silbersher's attorney responded: "No, Your Honor.  We think—we would concede that the relevant information from which the inference of fraud could be drawn is in the" patent prosecution history. *Id.*  He then directed the court to consider whether patent prosecution records are qualifying disclosures under the public disclosure bar and, if so, whether Silbersher is an "original source." *Id.*  That is why, when Silbersher tried to argue on appeal "that the information upon which he based his *qui tam* action was not 'substantially the same' as that which was publicly disclosed," this Court held that he "waived this argument before the district court" and refused to consider it. *Allergan*, 46 F.4th at 996 n.6.

Silbersher does not dispute that this Court so held, or that this Court was correct to do so.  He just insists that the Court should excuse his waiver this time around "in the interests of justice" because he "did not have the benefit of the *Valeant* decision" he recently procured in another one of his *qui tam* suits when he waived

the argument in this case. Silbersher.Br.40; *see U.S. ex rel. Silbersher v. Valeant Pharm. Int'l, Inc.*, 89 F.4th 1154 (9th Cir. 2024). There are any number of problems with that request, the first being that the Court lacks the power to grant it. The Court's previous holding that Silbersher waived the argument is law of the case. *See U.S. v. Real Prop. Located at 25445 Via Dona Christa*, 138 F.3d 403, 409 (9th Cir. 1998) ("In an unpublished opinion, this Court held Claimant's due process argument was waived. Therefore, the law of the case doctrine forecloses review of the issue."). And even setting aside that problem, Silbersher has no way around his waiver.

To be sure, courts may excuse *forfeiture* if justice requires, but they may not excuse *waiver*. Despite Silbersher's attempt to conflate the two, they "are not synonymous." *Hamer v. Neighborhood Housing Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). "Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the intentional relinquishment or abandonment of a known right." *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019). As both the Supreme Court and this Court have explained, it is "an abuse of discretion for a court to override" a party's "deliberate waiver." *Wood v. Milyard*, 566 U.S. 463, 472-73 (2012); *see also United States v. Lopez*, 4 F.4th 706, 719 n.3 (9th Cir. 2021). After all, "our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579

33

(2020). Resurrecting an argument a party has affirmatively relinquished would "depart from the principle of party presentation basic to our adversary system." *Wood*, 566 U.S. at 472.

None of Silbersher's cases is to the contrary. He invokes *United States v. Patrin*, 575 F.2d 708 (9th Cir. 1978), for the proposition that the Court may sometimes consider an issue that was "raised but conceded." Silbersher.Br.40-41. But the government's concession in *Patrin* was based on an inadvertent misreading of the relevant regulations. 575 F.2d at 711. That is a forfeiture, not an intentional waiver. *See Day v. McDonough*, 547 U.S. 198, 202 (2006). Silbersher's concession, by contrast, "did not stem from an 'inadvertent error.'" *Wood*, 566 U.S. at 474. Silbersher's counsel expressed a "clear and accurate understanding" of the issue, yet "deliberately steered the District Court away from the question and toward" other issues. *Id.* In short, Silbersher "knew" about the argument, "yet [he] chose, in no uncertain terms, to refrain from" making it—and, in fact, to concede that it failed. *Id.* This Court therefore correctly found his concession to be a "waive[r]" that he cannot renege now. *Allergan*, 46 F.4th at 996 n.6.[6]

---

[6] Silbersher's other cases are even more inapposite. Each involves forfeiture, not waiver, and some declined to excuse even that. *See Singleton v. Wulff*, 428 U.S. 106, 120-21 (1976); *Cmty. House v. City of Boise*, 623 F.3d 945, 968 (9th Cir. 2010); *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004); *In re Howell*, 731 F.2d 624, 626-27 (9th Cir. 1984).

Even if Silbersher's explicit concession could somehow be characterized as a forfeiture, the Court should not excuse it. This Court does not typically excuse forfeiture unless there are "exceptional circumstances why the issue was not raised in the trial court." *Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006). No such circumstances exist here. While courts sometimes consider forfeited arguments when there is a "change in the law during the pendency of th[e] appeal," *Patrin*, 575 F.2d at 712, there has been no such change here. This case does not involve a situation where "a decision of this Court bearing directly on the issue … was displaced by a Supreme Court decision after the proceedings in the district court were complete." *Dream Palace*, 384 F.3d at 1005. While Silbersher argues that this Court's decision in *Valeant* is an "intervening authority that was not available" in earlier proceedings, Silbersher.Br.39, he has insisted elsewhere that *Valeant* is simply a fact-bound application of the "framework set forth by this Court's precedents." Response to Rehearing Petition 7, *U.S. ex rel. Silbersher v. Valeant Pharm. Int'l*, No. 20-16176 (9th Cir. filed Oct. 25, 2023) ("Rehearing.Br."). At most, Silbersher claims that *Valeant* clarified how this Court's precedents apply to "the unusual (and unusually complex) allegations of patent fraud." Rehearing.Br.1. But applying existing precedent to new factual circumstances is something parties routinely do. Indeed, it was Silbersher himself who managed to press a comparable argument in

*Valeant*, which makes his request to excuse his waiver in this case all the more remarkable.

Nor do other considerations favor resurrecting his argument. While Silbersher notes that application of *Valeant* to the allegations in his complaint is a "pure question of law," Silbersher.Br.41, it is not the kind of "significant question[] of general impact" that justifies departing from normal party presentation principles, *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1110-11 (9th Cir. 2020). As Silbersher has argued elsewhere, whether a patent prosecution proceeding discloses "substantially the same" information as the relator's complaint is a "fact-sensitive," "fact-bound," and "fact-intensive" inquiry. Rehearing.Br.2, 6, 10, 7-8. And by Silbersher's own telling, it arises in only a "tiny subset of FCA cases" (largely brought by him). Rehearing.Br.9.

Silbersher insists that it would "promote confusion" should the Court reach a "different outcome[]" in this case. Silbersher.Br.42. But even assuming that affirming dismissal of a complaint that makes different allegations could constitute a "different outcome," waiver is hardly a novel concept to grasp. If anything, consistency cuts in favor of holding Silbersher to his concession. Courts routinely enforce waiver and forfeiture rules in cases with much greater stakes. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991) (enforcing procedural default rule against habeas petitioner even when it was a result of attorney error). There is

at least as much reason (if not more so) to enforce the same rules with equal vigor here.  Silbersher is not a typical litigant; he is a patent lawyer with self-described expertise in this area.  This is not his first *qui tam* suit; he is a serial relator who is seeking a nine-figure windfall based on information he gleaned from the public domain.  Silbersher is not proceeding *pro se*; he is represented by experienced counsel who routinely litigate FCA cases, *see, e.g.*, *Schutte*, 598 U.S. at 741, and who had the foresight to press this argument in *Valeant* on his behalf.

In fact, reviving Silbersher's argument at this late stage would prejudice *Defendants*.  The parties have devoted more than five years to litigating this case, during which they, the district court, and this Court have all proceeded under the assumption—based on an explicit concession made by Silbersher four-plus years ago—that publicly available patent prosecution filings fully disclosed the information underlying Silbersher's complaint.  Based on that understanding, Defendants devoted their resources to litigating whether patent prosecution proceedings qualify as a "Federal report, hearing, audit, or investigation" and whether someone who purports to use special "expertise" to glean fraud from public information may qualify as an "original source."  Allowing Silbersher to walk back a concession made years ago would waste all the time and resources the parties and courts have devoted to resolving those issues.  It would also encourage "sandbagging."  *Dream Palace*, 384 F.3d at 1005.  Given Silbersher's status as a

serial relator, it is unsurprising that he steered the district court toward legal issues that would have helped him across all his pending *qui tam* cases, rather than toward a fact-bound argument about what the specific patent prosecution proceedings at issue here disclosed. Allowing Silbersher to renege on his concession now would encourage litigants to strategically steer courts to rule on their preferred grounds, while escaping the consequences of those calculated decisions should they fail to get the ruling they really want.

2. In all events, Silbersher's argument lacks merit, as nothing in *Valeant* undermines the conclusion that publicly available patent prosecution proceedings disclosed all the relevant information underlying his complaint. In *Valeant*, Silbersher alleged that Valeant Pharmaceuticals fraudulently obtained patents so it could overcharge the government for Apriso. 89 F.4th at 1161-62. According to Silbersher, Valeant was about to lose its patent protection for Apriso because competitors challenged a group of "shaky" patents protecting the drug (called the Otterbeck patents). *Id.* Valeant sought to extend its monopoly by applying for a new patent (the '688 patent), claiming that it recently discovered that Apriso was effective when taken without food. *Id.* According to Silbersher, Valeant must have known that claimed discovery was obvious because individuals involved in the '688 prosecution had also been involved in an earlier patent prosecution (for the '344

patent) that claimed to have newly discovered that taking mesalamine (the active ingredient in Apriso) *with* food made the drug more effective. *Id.*

Valeant argued that the public disclosure bar precluded Silbersher's claims because the patent prosecution histories of the '688, '344, and Otterbeck patents disclosed the alleged fraud. *Id.* This Court disagreed. A disclosure, the Court explained, reveals "substantially the same … transactions as alleged" in the action if it discloses both the "misrepresented state of facts and the true state of facts." *Id.* at 1167. And while "the scattered qualifying public disclosures may each contain a piece of the puzzle," "they fail to present the full picture of fraud" when "pieced together." *Id.* at 1168. The '688 patent, the Court explained, disclosed Valeant's alleged misrepresentation ("that Apriso's effectiveness without food was not obvious"), but it did not disclose the "alleged truth—that it *was* obvious." *Id.* The '344 patent, on the other hand, disclosed the alleged truth, but not the alleged misrepresentation. *Id.* The Court therefore concluded that "no public disclosure here, individually or in combination, establishes facts from which fraud could be inferred." *Id.* at 1169.

Silbersher tries to glean from that factbound decision a categorical rule that the misrepresented state of facts and the true state of facts must be disclosed in a single source. Silbersher.Br.31-32. But that would put *Valeant* at odds with a long line of precedent. This Court has squarely held that "the elements of the fraud

allegation need not have been made public in a single document." *U.S. ex rel. Haight v. Catholic Healthcare West*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006).[7] And it has repeatedly affirmed dismissals of *qui tam* suits when the disclosure occurred in multiple sources. *See, e.g.*, *U.S. ex rel. Hong v. Newport Sensors, Inc.*, 728 F. App'x 660, 662 (9th Cir. 2018); *U.S. ex rel. Yagman v. Mitchell*, 711 F.App'x 422, 423 (9th Cir. 2018); *Seal 1 v. Seal A*, 255 F.3d 1154, 1157 (9th Cir. 2001); *A-1 Ambulance*, 202 F.3d at 1245.[8] This Court should not embrace a reading of *Valeant* that contradicts its earlier precedents—especially at the behest of the very party who assured this Court that *Valeant* effected no change in the law. Rehearing.Br.3-8. After all, "one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel." *Duarte v. City of Stockton*, 60 F.4th 566, 574 (9th Cir.

---

[7] Silbersher has tried to characterize that statement as dictum. Rehearing.Br.9. But *Haight* explicitly considered and rejected the relator's argument that the fraud must be disclosed in a single source. *See* 445 F.3d at 1151 n.1 ("*Contrary to Appellants' assertion*, we assume that the elements of the fraud allegation need not have been made public in a single document." (emphasis added)). And while *Haight* interpreted the pre-2010 version of the public disclosure bar, *Valeant* itself reiterated that Congress's decision to swap the pre-2010 language for the phrase "substantially the same as" merely "re-enacted its prior law in clearer terms … leaving our precedent interpreting that phrase undisturbed." 89 F.4th at 1167.

[8] So have other circuits. *See Winkelman*, 827 F.3d at 208 (1st Cir.); *Moore & Co.*, 812 F.3d at 303 (3d Cir.); *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144-46 (5th Cir. 2017); *U.S. ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 824 (6th Cir. 2021); *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 718-19 (7th Cir. 2017); *United States v. CSL Behring, LLC*, 855 F.3d 935, 944 (8th Cir. 2017); *Reed*, 923 F.3d at 749 (10th Cir.); *Osheroff*, 776 F.3d at 812-14 (11th Cir.); *U.S. ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86-87 (D.C. Cir. 2014).

2023). "Therefore, when a subsequent panel makes a suggestion that is inconsistent with earlier opinions of this court, such suggestions are to be disregarded in favor of the earlier, binding holding." *Id.*

In all events, *Valeant* is readily distinguishable even on Silbersher's reading, as a single public disclosure *did* "put the government on notice to investigate" the alleged fraud here. *U.S. ex rel. Solis v. Millenium Pharms., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018). Start with Silbersher's allegations related to the '009 Patent. Unlike the prosecution records in *Valeant*, the records for the '009 Patent direct the public both to the alleged misrepresented state of facts and the true state of facts. The complaint acknowledges that Forest "disclosed the '553 Patent" (which reveals the alleged truth) as relevant background art "at an earlier phase of the prosecution of the '009 Patent" (which reveals the alleged misrepresentation). ER164 ¶97; *see also* 2-SER-466. Anyone who bothered to read the prosecution record for the '009 Patent and the background art disclosed during it thus would have discovered both the alleged misrepresentation and the alleged truth. A single patent prosecution proceeding likewise supplied notice of Silbersher's allegations about the Went Patents. Adamas provided copies of Amneal's answer to the USPTO while prosecuting patent applications 15/090,396 and 15/090,400. 1-SER-34. Anyone who bothered to read the prosecution records and the publicly accessible documents referenced during them would have discovered the basis for Silbersher's allegations.

41

Perhaps recognizing as much, Silbersher points to several additional "categories of facts" that were supposedly "not in the public sources." Silbersher.Br.33. But this Court has long held that a disclosure need not contain every single detail underlying a complaint's allegations. *See Amphastar*, 856 F.3d at 704. What it discloses need only be "close enough in kind and degree to have put the government on notice to investigate." *Solis*, 885 F.3d at 627. Here, the disclosures revealed the crux of Silbersher's allegations: Defendants supposedly defrauded the PTO into awarding patents so they could charge more for their drugs. Silbersher maintains that the public sources did not disclose that "the '553 Patent must be considered prior art based on the calculated priority date for the '009 Patent." Silbersher.Br.35. But Forest disclosed the '553 patent as potentially relevant background art during the '009 Patent prosecution. *See* 2-SER-466. And while Silbersher insists that he "provide[d] important information" by calculating the priority dates, Silbersher.Br.35, he does not dispute that the government (and especially the PTO) can calculate priority dates too.[9]

---

[9] Moreover, much of what Silbersher claims he added is based "on information and belief." *See, e.g.*, ER162-64 ¶¶86, 94, 97. That does not cut it. To escape the public disclosure bar, a relator must have "true knowledge, as opposed to guesswork or suspicion, since the purposes of the Act would not be served by allowing a relator to maintain a *qui tam* suit based on pure speculation or conjecture." *Prather*, 847 F.3d at 1104; *see also U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) (same).

Silbersher next contends that public sources did not disclose that the alleged misstatements were "intentional (and therefore fraudulent), versus merely negligent." Silbersher.Br.35. Setting aside that Amneal managed to glean the same accusation from the same sources, 1-SER-123 ¶50, this Court has squarely rejected that argument. In *Solis*, the relator argued that his allegations were "not substantially similar because he alleged fraud," whereas the public disclosure "alleged only negligence." 885 F.3d at 627. This Court disagreed, explaining that the "absence of any explicit allegation of wrongdoing in the prior public disclosure 'is simply of no moment' so long as 'the material transactions giving rise to the defendant's allegedly unlawful schemes were publicly disclosed.'" *Id.* (alterations omitted).

Trying a different tack, Silbersher claims that public sources did not disclose *which* patents "could have affected the ability of generic manufacturers to enter the market for Namenda XR and Namzaric." Silbersher.Br.36. But the Orange Book reveals precisely that information. Indeed, the entire point of the Orange Book is to put the public and the FDA "on notice" of which patents protect which drugs. *Caraco Pharm. Laboratories, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 420 (2012). Silbersher claims that the public disclosures did not reveal "how defendants' litigation positions in infringement actions filed against generic competitors were instrumental in keeping those competitors from entering the market and therefore inflating the price the Government paid." Silbersher.Br.38. But the Court

considered and rejected a similar argument in *Amphastar*, concluding that a relator cannot skirt the public disclosure bar by pointing to "obvious inference[s]" about how drug patents work. 856 F.3d at 704. This much-belated argument thus is not only waived, but meritless.

## II.     Silbersher Fails To State A Viable Theory Of A False Claim.

In addition to being foreclosed by the public disclosure bar, Silbersher's *qui tam* complaint fails to plausibly allege that Allergan submitted a false claim. The FCA "is not an all-purpose antifraud statute." *Escobar*, 579 U.S. at 194. It is "not designed to reach every kind of fraud practiced on the Government." *United States v. McNinch*, 356 U.S. 595, 599 (1958). It "attaches liability" only for a false "claim for payment"—"not to the underlying fraudulent activity or to the government's wrongful payment." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Thus, a relator must demonstrate that a *claim for payment* is false before recovery can lie. *See Kitsap*, 314 F.3d at 1002. In short, an "actual false claim is the *sine qua non* of a False Claims Act violation." *Id.*

Silbersher's claims do not fit that bill. He does not allege that Allergan sought money for drugs it did not supply, or for drugs that were not what Allergan promised they would be. Nor does he claim that Allergan submitted claims for more money than it was owed under its agreements with the government. Instead, Silbersher resorts to exceedingly strained theories of "promissory fraud" and "implied false

certification" to try to connect representations made to the PTO in decade-old patent prosecutions to wholly independent drug sales to other government agents and agencies. Silbersher's theories would push those narrow doctrines well past their breaking point and convert the FCA into exactly the kind of all-purpose anti-fraud statute that the Supreme Court has repeatedly admonished it is not.

### A.    Silbersher's Promissory Fraud Theory Fails.

Under the promissory fraud theory of a false claim, "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006). Because the fraud in such a case is necessarily (at least) one step removed from the claim for payment, a promissory fraud claim will lie only where the initial fraud is "integral to a causal chain leading to payment." *Id.* at 1174. That strict causation requirement is essential to ensuring that the FCA does not turn into an "all-purpose antifraud statute." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008); *see also U.S. ex rel. Cimino v. Int'l Bus. Mach. Corp.*, 3 F.4th 412, 425 (D.C. Cir. 2021) (Rao, J., concurring) (observing that the promissory fraud theory is in significant tension with the FCA's text, which attaches liability only for a false claim for payment, not to any underlying fraudulent activity). As the federal government has acknowledged, "at some point the causal chain can become so

45

attenuated that the subsequent claim for payment no longer retains the 'taint' of the defendant's initial fraud."  Brief for the United States as Amicus Curiae 27, *U.S. ex rel. Campie v. Gilead Scis., Inc.*, No. 15-16380 (9th Cir. filed Jan. 15, 2016) (citation omitted); *see also D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) (no causal link between manufacturer's alleged misrepresentations to FDA and Medicare's later payment of claims to support fraud-in-the-inducement theory).

In keeping with those principles, promissory fraud has typically been reserved for cases where the request for payment is a *direct* result of the alleged fraud—e.g., where the defendant fraudulently procured a contract from the government under which it later requests payment, *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 542-44 (1943); *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741-42 (7th Cir. 2021), or lied to the government to obtain eligibility for payment, *Hendow*, 461 F.3d at 1174; *Campie*, 862 F.3d at 905.  Accordingly, it is the "rare" FCA claim that can succeed on a promissory fraud theory.  *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).

This is not that rare case.  By Silbersher's own telling, his chain of causation proceeds as follows:  Defendants "defrauded" the PTO into issuing patents for Namenda XR and Namzaric because they allegedly failed to disclose certain information to the PTO; Defendants then complied with their statutory obligation to list those patents in the Orange Book, *see* 21 U.S.C. §§355(b)(1), (c)(2), (j)(7);

generic manufacturers then exercised their statutory right to attack the patents, *id*. §355(b)(2)(A)(iv); Defendants then exercised their statutory right to challenge those attacks in infringement actions, 35 U.S.C. §271(e)(2)(A); those actions triggered an automatic statutory stay that temporarily prevented generics from entering the market, 21 U.S.C. §355(j)(5)(B)(iii); that stay allowed Defendants to continue charging "monopoly" prices for the drugs; the government decided to purchase some of those drugs; the "monopoly" prices Defendants charged private parties elevated the "market prices" that they were required to submit to federal officials to help them decide what price the government would pay; the market prices in those submissions led those officials to accept prices that were too high; and all of that made any and all claims for reimbursement of either drug at the agreed-upon prices "false."

That strained effort to divine some connection between facially independent events would put Rube Goldberg to shame. The complaint does not even allege that the government would have refused the claims had it known about the purported "fraud" on the PTO; it alleges only that the government would have paid lower prices—a proposition that itself requires speculation about the behavior of other market participants. As another district court put it in rejecting a nearly identical claim, the theory that "every invoice submitted for payment" to the government "violate[s] the False Claims Act because of [] misrepresentations to the USPTO from years ago" is "fatally flawed" when, as here, there is no "meaningful connection

47

between the two." Opinion at 5, *U.S. ex rel. Promega Corp. v. Hoffman-LaRoche Inc.*, No. 03-1447-A (E.D. Va. Sept. 29, 2004); *cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 470 (2006); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201-03 (2017). Whatever the outer limits of promissory fraud in this context, Silbersher's claims are leaps and bounds beyond it. Promissory fraud is not a loophole through which relators can conjure up claims based on decade-old allegations that are nearly a dozen steps removed from any claim for payment.

### B. Silbersher's Implied False Certification Theory Fails.

Silbersher's "implied false certification" theory fares no better. To establish a false claim under an implied false certification theory, a plaintiff must establish two things: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 579 U.S. at 190; *see also U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018). The absence of either element—a specific representation or a misleading half-truth—compels dismissal. Silbersher's allegations lack both.

Silbersher grounds his implied false certification theory on a certification that Allergan sent to the General Services Administration when requesting that Namenda XR and Namzaric be listed on the Federal Supply Schedule, the master list of prices

48

the government pays for various products. ER170 ¶113. According to Silbersher, Allergan's request included a "written justification for [the] offered pricing" and "proof that the price is fair and reasonable," each of which was a specific representation and a misleading half-truth. ER170 ¶113. The problem with that theory is that Allergan's submissions to GSA did not make any representation that the offered pricing was "fair and reasonable." That is a determination solely for the GSA contracting officer, 48 C.F.R. §§8.402, 15.404-1; GSA Acquisition Manual §538.270-2, to be made by "comparing the prices/discounts that a company offers the government with the prices/discounts offered to commercial customers," a practice known as "most favored customer" pricing, 2-SER-263.

To help the contracting officer "make this comparison," the government "requires offerors to furnish commercial pricelists and disclose information regarding their commercial pricing/discounting practices." *Id*.; *see also* 48 C.F.R. §15.404-1(b) (instructing contracting officers to compare proposed prices to prices "received in response to the solicitation," "historical prices paid," "competitive published price lists, published market prices of commodities, similar indexes, and discount or rebate arrangements," and "prices obtained through market research for the same or similar items"); GSA Acquisition Manual §538.270-2 (similar). But it does not require offerors to make any certifications about whether the prices they have charged other parties are "fair" or "reasonable."

49

That factual information is all Allergan provided here: a commercial pricelist and an explanation of pricing practices. That information was not a representation (implied or otherwise) about "fairness" or "reasonableness"; it was simply a representation of what prices Allergan has charged for its drugs. Silbersher does not allege that the information Allergan provided was inaccurate, let alone misleading. Nor does he allege that Allergan misrepresented anything about the drugs themselves. This case is thus nothing like *Campie*, where a company whistleblower alleged that the defendant had falsely certified that a drug was FDA approved, which was a prerequisite for government reimbursement. 862 F.3d at 903. Nor is this case like *Escobar*, where the contractor "submit[ted] claims for payment using payment codes that corresponded to specific counseling services." 579 U.S. at 189. At most, Allergan's offered pricing could be construed as a request to be paid that much for the drugs. But a "mere[] request [for] payment"—especially one based on accurate statements about market prices—is insufficient to state a violation of the FCA. *Id.* at 190; *Campie*, 862 F.3d at 902. Thus, even taking Silbersher's allegations as true, his implied false certification theory fails as a matter of law.

## III. Silbersher's Allegations Against The Allergan Defendants Fail For Additional Reasons.

Even if Silbersher could somehow convert allegations of fraud on the PTO into a viable FCA claim, this Court should nevertheless affirm dismissal of his complaint against the Allergan Defendants because none of them "defrauded" the

PTO at all—let alone with the scienter the FCA demands. Nor has Silbersher plausibly alleged that any supposed "fraud" was material to the government's decision to pay for the drugs.

## A. Silbersher Failed to Plausibly Allege That the Allergan Defendants Committed Fraud on the Patent Office.

As Silbersher recognizes in his complaint, Allergan did not prosecute the Went Patents. Adamas and its CEO, Dr. Went, prosecuted the patents and submitted the supporting declarations, and Adamas was the "original sole assignee" of each patent. ER152-63 ¶¶58-90. Adamas eventually licensed the Went Patents to Forest in November 2012. But that was months *after* the PTO granted most of them and well after Went drafted and signed the declarations that Silbersher claims were misleading. ER152-53 ¶58; 2-SER469-70. The district court nevertheless found Silbersher's allegations plausible because Adamas applied for two of the Went Patents after November 2012. ER120. But Silbersher's complaint never alleges that Forest participated in drafting, reviewing, or submitting the declarations supporting those applications or otherwise played any role in their prosecution. Silbersher cannot "lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007) (citation omitted). Rule 9(b) requires him to allege facts specifying how "each defendant separately … participat[ed] in the fraud." *Id.*

As for the '009 Patent, Silbersher concedes that Forest disclosed the '553 Patent as prior art in its initial application but claims that Forest misled the PTO by

failing to re-flag the reference when it later amended the application. ER164 ¶96. According to Silbersher, the Examiner would not have "considered" "[t]he '553 Patent's once-daily teaching" when reviewing the application "on September 28, 2009," because it purportedly did not "require 'once daily administration'" until it was amended "on March 15, 2011." ER164 ¶96. But the prosecution record for the '009 Patent (which is subject to judicial notice, *see Data Engine Techs. v. Google*, 906 F.3d 999, 1008 n.2 (Fed Cir. 2008)), thoroughly refutes those allegations twice over. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts need not accept allegations that are contradicted by documents subject to judicial notice).

First, Forest *had* claimed "once-daily administration" by September 28, 2009. Claim 31 of the original application for the '009 Patent claimed: "The modified release solid oral dosage form of claim 1, wherein said modified release solid oral dosage form *is administered once-a-day*." Claims, Application No. 11/155,330 (June 16, 2005).[10] The specification likewise described "memantine or a pharmaceutically acceptable salt thereof … and one or more excipients *to be administered in a once-a-day oral dosage form*." 2-SER-407. Unsurprisingly, the Examiner thus *did* consider the '553 Patent that Forest had disclosed when he

---

[10] The docket for the prosecution is accessible here: http://tinyurl.com/yck5pw5p.

evaluated Claim 31 on September 28, 2009. The "List of References Cited by Applicant and Considered by Examiner" states that "all references considered except where lined through." 2-SER-454. The '553 Patent is listed, and it is not "lined through." *Id.*

To be sure, Forest dropped Claim 31 in December 2009 after the Examiner initially rejected it. *See* Claims, Application No. 11/155,330 (Dec. 11, 2009).[11] And Forest did not re-flag the '553 Patent specifically when it added the once-daily limitation back into the application in March 2011. But Forest explicitly referred the Examiner to its original application—including the prior art it submitted alongside Claim 31. *See* Applicant Arguments/Remarks Made in an Amendment 1, Application No. 11/155,330 (Mar. 15, 2011) ("The currently pending claims have been amended to recite methods for treating Alzheimer's disease comprising once daily administration … Support for the amendments can be found in the originally filed claims and throughout the specification."). And in all events, it is black-letter law that "[a]n applicant is not required to tell the PTO twice about the same prior art." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000); *see also* 37 C.F.R. §1.56(a). While applicants typically must re-disclose prior art when it

---

[11] The Examiner rejected Claim 31 in part because it was obvious in light of a different patent, but he left open the possibility that the once-daily limitation could be valid if amended. *See* Non-Final Rejection 6, Application No. 11/155,330 (Oct. 7, 2009).

"was previously submitted to, or cited by, the Office in an *earlier application*," 37 C.F.R. §1.98(d) (emphasis added), they need not re-disclose prior art submitted in an earlier version of the *same application*. Indeed, even in the separate applications context, the PTO deems the duty to disclose satisfied if the "earlier application is properly identified in the information disclosure statement" of a continuation application. 37 C.F.R. §1.98(d). If disclosing prior art in an earlier application for a *different* patent can satisfy the duty to disclose, then disclosing prior art at an earlier phase of the *same application* suffices *a fortiori*.

### B. Silbersher Failed to Plausibly Allege That the Allergan Defendants Acted With the Requisite Scienter.

To violate the FCA, one must "knowingly present[] … a false or fraudulent claim," meaning with "actual knowledge" of such falsity, "in deliberate ignorance of the truth or falsity," or "in reckless disregard of the truth or falsity," 31 U.S.C. §3729(b)(1)(A). That "scienter requirement is 'rigorous,'" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1176 (9th Cir. 2016), and this Court has repeatedly "emphasized [its] central importance," *Hendow*, 461 F.3d at 1171. "[S]trict enforcement" of the scienter "is critical to ensuring that FCA liability attaches only for false or fraudulent claims and not for accidental or even negligent breaches of contract." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1261, 1271 (D.C. Cir. 2010). This Court thus regularly affirms dismissals of FCA complaints for failing to plausibly allege scienter. *See, e.g.*, *Gonzalez v. Planned*

54

*Parenthood of Los Angeles*, 759 F.3d 1112, 1115-16 (9th Cir. 2014); *Adomitis ex rel. United States v. San Bernandino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66-67 (9th Cir. 2020).

Silbersher failed to plausibly allege scienter. As to the Went Patents, his allegation that *Adamas* intentionally submitted false declarations to the PTO says nothing about whether *Allergan* knew those declarations were false. The district court held that Silbersher plausibly alleged that Allergan acted "at least recklessly" because it "was already an exclusive licensee at the time two of the applications were filed." ER120. But the term "reckless disregard" in the FCA "captures defendants who are *conscious* of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Schutte*, 598 U.S. at 751 (emphasis added). The district court did not point to a single allegation in the complaint suggesting that Allergan had any reason to think there was a "substantial and unjustifiable risk" that Adamas might be submitting false declarations.

Silbersher likewise failed to plausibly allege that Forest knowingly concealed the '553 Patent from the PTO while prosecuting the '009 Patent. His sole allegation is that Forest must have known that "the Examiner was unlikely to" re-examine the '553 Patent because Forest is a "sophisticated pharmaceutical company" with "long experience with the Patent Office." ER165 ¶98. The district court also speculated that Forest's decision not to re-flag the '553 Patent must have reflected some

intentional effort to conceal. ER120. But the "obvious alternative explanation," *Gonzalez*, 759 F.3d at 1116, is that Forest knew the Examiner had already considered the '553 Patent when assessing Claim 31 of the original application, which disclosed it. There was therefore no need to disclose it yet again, as "[a]n applicant is not required to tell the PTO twice about the same prior art." *Fiskars*, 221 F.3d at 1327. An allegation that a party acted in compliance with the law is plainly insufficient to give rise to an inference of scienter.

### C. Silbersher Failed to Plausibly Allege That the Alleged Misrepresentations Were Material to the Government's Payment Decisions.

A "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 181. Like the scienter requirement, the "materiality standard is demanding." *Id.* at 194. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* The noncompliance must go to the "very essence of the bargain" between the defendant and the government. *Id.* at 193 n.5 (citation omitted). This Court regularly affirms the dismissal of *qui tam* complaints

on materiality grounds. *See, e.g.*, *Gharibian ex rel. U.S. v. Valley Campus Pharm.*, 2023 WL 195514, at *2 (9th Cir. 2023); *Parker v. Sea-Mar Cmty. Health Ctr.*, 853 F. App'x 197, 198 (9th Cir. 2021); *see also Escobar*, 579 U.S. at 195 n.6.

If "the Government pays a particular claim despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." 579 U.S. at 195. Here, Defendants expressly informed the government of the same allegations Silbersher presses when they disclosed the Amneal Answer to the PTO in 2016. *See supra* pp.11-12. And as Silbersher admits, the government nevertheless continued to pay for Namenda XR and Namzaric in 2017 and 2018, ER176 ¶136—and continued to do so after Silbersher informed it of those allegations once again, ER184 ¶165. Silbersher's complaint does not even try to "rebut[] th[at] strong evidence" that any purported misrepresentations were not material to the government's decision to pay for the drugs. *Parker*, 853 F. App'x at 198. That too dooms his claims.

## CONCLUSION

This Court should affirm.

Respectfully submitted,

s/Erin E. Murphy
ERIN E. MURPHY
 *Counsel of Record*
JAMES XI[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Defendants-Appellees Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC, and Forest Laboratories Holdings, Ltd.*

January 29, 2024

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the Allergan parties state that the Court is currently considering *Silbersher v. Valeant Pharm. Int'l*, Nos. 20-6176 and 20-16256, a case that involves the same relator and raises related issues. The Court issued its amended opinion on January 5, 2024. On January 11, Appellees filed a motion to stay the mandate for 90 days while they determine whether to file a petition for a writ of certiorari in the U.S. Supreme Court. The Court granted the motion on January 26. Counsel is aware of no other related case.

January 29, 2024

s/Erin E. Murphy
Erin E. Murphy

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Circuit R. 32-1 because this brief contains 13,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

January 29, 2024

s/Erin E. Murphy
Erin E. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin E. Murphy

# STATUTORY ADDENDUM

Section 3730(e)(4)(A) of the False Claims Act provides in relevant part:

(A)  The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. §3730(e)(4) (footnote omitted).